spirit. I hope I pronounced your name correctly. It's Merrick. Yes. Thank you. Good morning. Please the court. My name is Betty Merrick. I'm the assistant federal defender in the Western District of Louisiana, Shreveport Division, and I was appointed to represent Montreal Jones. Two issues were presented in the defendant's appellant opening brief, the septum reasonableness of an above guideline sentence and condition of supervised release, which was imposed, which the government has already conceded error on. The third issue was raised in our supplemental brief, which we filed on February 2nd of 2023. And with the court's permission, I would like to jump to that issue because I think that's probably really why we're here today. Um, in the supplemental brief, the issue that we raised was that in light of this court's decision in United States versus Rahimi, which was rendered on February 2nd, 2023, holding that 18 U. S. C. 9 22 G. Eight is unconstitutional under the Second Amendment. Did the district court commit plain error by accepting Jones guilty plea to being a prohibited person in possession of possession? You heard the arguments of the Supreme Court recently. I take it on November 7th. The arguments. What should we do? I did. I would propose, um, reluctantly that the government that the court do with the government has suggested, which is to hold us in abeyance until we figure out what the Supreme Court is going to do in Rahimi. I listened to the arguments. I think I might know where it's headed, but I'm unsure because I certainly didn't see Rahimi coming out of this court on February 2nd of 2023. So, um, that would be my proposal. Otherwise, I think we might just be back here six months or a year from now, revisiting this case in light of the holding in United States versus Rahimi at the Supreme Court. Go ahead. Okay. I just want to know what your position was on that. That is my position. I think that that that is in the interest of judicial economy. I think that is the answer. However, I think if this court were to proceed today, we would have to then move into the plain error standard, which we have outlined in our brief why we think we meet the criteria set forth there. And I think the government would concede that if we do reach them reach the merits, then the conviction under the 9 22 G count would have to be vacated. The 9 22 Q count still stands. We're not making any suggestion that that count should be vacated, and this matter would simply be remanded to the district court for resentencing on that count. Remind me I should have looked this last night, but it's a lot of water has been under the bridge. Was there a guilty plea in this? The guilty plea was, the timeline is very important in this case. The guilty plea . . . I know there was a guilty. What did it waive and what did it preserve? So on the guilty plea, the defendant pled guilty, Mr. Jones pled guilty to two counts, the 9 22 G, possession by a prohibited person, and then the 9 22 Q count, which was the possession in the school zone. But there wasn't an appeal waiver, right? No, there is no appeal. That's what I thought. Our judges in the Western District Supreme Court Division won't accept appeal waivers. Okay, that's what I thought. There is no appeal waiver. And the issue then becomes, did we preserve under the plain error standard? And the government has raised the waiver forfeiture question. We suggest that the error was forfeited, not waived, and that this court has the discretion to consider this under the plain error standard. Well, since we're here and that Rahimi may come out a different way than we know . . . We don't know, yes. Should we address the other issues? Well, I think that is the controlling issue in this case, is what's going to were to decide. My position is that under a plain error review standard, we've met all the requirements of plain error. Those were outlined in my brief. I could certainly go through them if the court wanted me to, but I think that we've done that. And the only argument made by the government is that we have in regard to that is that we waive this claim by not preserving it. And my position on that is that we had no idea that Rahimi was going to be decided on the day the government filed its reply brief to our original brief. And so we raised this issue as soon as Rahimi became the law in the Fifth Circuit, saying that the crime that the defendant pled guilty to was unconstitutional. I guess my point was, if the Supreme Court says no, that it's not unconstitutional, that he was properly convicted, then should we address the issues that you initially raised, the upward departure, the imposition of supervisor leased? Well, the government concedes the issue on supervisor leased. I think the court could fix that. What about the upward departure easily? I think the upper departure, the unreasonableness and the standard of review there is abusive discretion. Um, the judge made the ruling. I think it's unreasonable. The sentence was unreasonable in that it was a 70% increase over and above the initial guideline range, which was 36 to 47 months. And that what the court relied on there were in fact, in part, I think that the heavier weight was placed upon the four protective orders. And if that no longer controls under Rahimi, then I think that that factor should be given less weight. And then we would have to decide whether the other factors relied upon by the judge, which were the danger to public safety because the gun was possessed in the gun in the school zone under the guideline into the calculations, he's within the 36 to 47 months. And that may affect the lower court's decision on what to do with Mr. Jones at a resentencing. Going back to the Rahimi issue, we have a fair number of cases where the Supreme Court has been considering some trigger issue, but panels have pressed ahead and just decided the controlling precedent. What's different here? I mean, I know it's Rahimi, but it's not the first time that we meet in the court and encounter a situation where we have existing precedent, Supreme Court's deciding something, but we have a record and we could go ahead and move ahead. Is there intrinsically something or qualitatively different in the circumstance than other cases that I've looked at where we have just decided the controlling law notwithstanding? Well, I think in this case, Rahimi is on all fours with the facts in Jones. I think that Bruin changed the landscape for us. As I said, I did not see Rahimi coming out of this court. And so, I think that's what makes this case different is that we have a constitutional claim, a Second Amendment claim, and I think that that squarely puts that in the discretion of this court what to do with that issue. I think it's been properly preserved as best as we could under the timeline as things came down here. And so, I think that Mr. Jones has, and I think that to not address it, if the court chooses to go forward at this point, violates substantial rights and impugns the integrity of the judicial system. We now have a client who's convicted of something that's no longer a crime if Rahimi stands. I think his question was, you said we should wait for the Supreme Court to decide. I think that was his question. Why should we wait? Why should we wait? Well, the Supreme Court has already heard oral arguments. It's already been briefed. I would suspect that we would have a sentence within, I mean, a disposition, an opinion within maybe six months. I think that they're expecting this to be rendered in around June. I think if we were to, by the time this court rendered its opinion, it's got to go back anyway for the supervisor release issue that was raised in our original brief. I think that, at that, I just think we'll have an answer fairly soon. And I think that is what makes this different, is that it isn't an issue that's just been raised. CERT hasn't just been granted. The oral arguments were held on November 7th. We've already had a month, water under the bridge, and time passed. So, I think that we're going to have a ruling fairly soon, and we'll know what we should be moving forward. What's his status now? Remind me. Mr. Jones is served about 18 months of his 78-month sentence. And depending on what, there has been discussion in the briefs about what sentence might be imposed. We don't know what Judge Doty would do. I don't think that the sentence would be less so that Mr. Jones would be in an overstay situation. If we waited on the Supreme Court, I don't think there would be harm to him. Thank you. All right. Thank you. You saved time for rebuttal. Thank you. Good morning. I'm going to please the Court. Brendan Gants for the United States. The easiest way to resolve this case would be, as my friend on the other side suggested, to hold it pending the Supreme Court's decision in Rahimi. The government has made that argument as an alternative to our waiver argument, and we would have no objection to that disposition. That disposition would be appropriate in this case, as it is appropriate in at least one other case that this Court has held presenting the same issue pending the Supreme Court's decision in Rahimi. That's the McPherson case, No. 23-40258. I know that's not a universal practice. Judge Stewart is familiar with the Perez-Villan case, where this Court decided not to hold for Rahimi, but I think it would be particularly appropriate in this case for several reasons. First of all, it's now undisputed that that is an appropriate outcome, which wasn't the case in either McPherson or Perez-Villan. Additionally, in this case, the decision in the Supreme Court's decision in Rahimi is likely to be outcome determinative in one direction or another. Mr. Jones has raised only a facial constitutional challenge, not an as-applied challenge, as the defendant in Villan did, and so the Supreme Court's decision is likely to determine the outcome of this case, because if the Supreme Court reverses this Court's decision in Rahimi and holds that Section 922G8 is constitutional, that of course would moot Mr. Jones's constitutional challenge. At the same time, if the Court were to affirm in Rahimi and hold that Section 922G8 is unconstitutional, then at that point the government would very likely relinquish its procedural defenses. The government has no interest in keeping someone imprisoned on procedural grounds who is actually innocent of the statute of conviction. Now, you say that. It's no offense. This is really frustrating for me, because we have cases where the government has not made that concession. They're saying, well, there was a guilty plea, and even though it's no longer an offense, it never was, based on the Supreme Court's construction, this person needs to be imprisoned for the full amount of the sentence. The conviction stays on the books because he agreed to an appeal waiver. Your Honor, I'm not familiar with the facts of all of those cases. I know that there are some cases involving appeal waivers where the government has taken a position that the appeal waiver presents a distinct set of considerations, including contract principles and what the parties bargained for. Now, I know that even in many of those cases, the government does confess error and relinquish. Well, why is it the government consistent? I'm sorry to put you on the spot here, but it's very frustrating to me that in some cases, the government insists on enforcing the appeal waiver when the conviction is for non-existent crime. On others, it says, no, we're no longer interested in pursuing this. Why is it there's some consistency? I understand your Honor's point. Again, I'm not familiar with the facts of all of those cases, and we don't have an appeal waiver here. No, I know, but I'm just sending a message. Would you please check with your higher-ups and at least be consistent in the cases that we have? Absolutely, Your Honor. I will pass that message along to . . . You're from DOJ, right? I'm sorry. Yes, Your Honor. I'm from DOJ. I'll pass that important question along to . . . Thank you. I'm curious. I mean, most of the time, these cases just had a local . . . I don't mean just, but have the local U.S. Attorney's Office, and at least for my eyes, that can speak to some variations because it's the AUSA or that particular office making the decision as opposed to, in this case, DOJ, you know, making that. Is there something to be read into the fact that DOJ is making this hold it in obedience argument as sort of an institutional position versus . . . in most of the cases, we don't. I mean, unless it's a humongous case, we have the U.S. Attorney's Office, and I assume that's kind of a local issue. I wouldn't read anything into the fact that I'm here instead of someone from a U.S. Attorney's Office, Your Honor. I think that the government wants to convey its general practice in circumstances such as these where there's an issue regarding waiver because an issue hasn't been raised in the district court or in an opening brief on appeal. I don't mean to suggest something about what the government's practice would be in other circumstances.   . And I think that Landy will explain some of this. Okay. Perfect. Yeah.  . Broon Did affect the sea change in the hire runner and the government is not taking the position that Mr. Jones waving anything reasons running. However after ru excerpt from the wrongs. We shall discrimination including 9 22tam missus and seeing be impatient and run on the constitutionality of 922 G8 had been briefed and argued in Rahimi and at least one other defendant had already challenged the constitutionality of that statute based on ruin in another district court in this circuit. That's the press on case by the time Mr. Jones filed his opening brief. Additionally the district court in that case had struck down 922 G8 as unconstitutional and dismiss the indictment on that basis. And by the time Mr. Jones filed his opening brief at least three defendants in other cases throughout the country filed motions challenging the constitutionality of 922 G8 based on the prisoners don't share their work. I'm sorry. I didn't hear your honor's question. Prisoners don't share their work product. I understand your honor. But the point is that there there after Bruin there was certainly possibility of seeing this this issue and the government respectfully submits that Mr. Jones's argument about the constitutionality of the statute are not unlike cases where this issue was raised in the district court and the court held waivers based on defendants declining to raise an issue in his opening brief. In the Ragsdale case there was a constitutional challenge to the statute of conviction and the court held that by not waving by not raising the issue either in the district court or in his opening brief on appeal that the defendant had waived that issue even though it went to the constitutionality of the statute of conviction. In all events I would respectfully submit there's no sound reason why this court should exercise its discretion to excuse Mr. Jones's failure to raise this argument earlier in light of this court's decision in Rahimi and at the same time also exercise its discretion to decide the issue now just a few short months before the Supreme Court will decide the case in Rahimi. And I just want to be clear exactly what you're asking. You're saying hold it for Rahimi and if it if the court decides that this was a valid conviction then what. If the court decides that this was a valid conviction that sorry so if the Supreme Court you're saying we're to reverse this course decision and hold that the statute isn't is constitutional then this court at that point could decide the case or could invite supplemental briefing. Well you just said he raised it too late and his reports were reply brief. That's where I'm you're saying in this case because he didn't raise it till his reply brief we shouldn't consider it at all. In the circumstance that Your Honor is describing if this court were to hold for Rahimi and then the court were to the Supreme Court were to decide as Your Honor described then the constitutional challenge would be mooted by the decision in Rahimi and so the only issues for this court's consideration would be the issues that. Well not if you wiped it. If you said we shouldn't ever look at it. We shouldn't look at the Rahimi issue period because he didn't rise in his initial brief so what difference would it make what the Supreme Court ruled in Rahimi if he waived the issue. I think this court could decide the issue of waiver now and could decide that he waived the issue. Alternatively if this court were to hold for the Supreme Court's decision. Which is your what is the government's position. Did he waive it. We shouldn't care about what the Supreme Court is going to say or should we wait. The government's position is that he did waive it and this court could decide now that he waived it. Alternatively the government has suggested that the court could hold the case pending the Supreme Court's decision in Rahimi and that would also be appropriate. As my friend on the other side conceded would be appropriate. I want to mention some points related to the issues that the defendant raised in his opening brief on appeal both because those would be the only issues left if this court were to hold the case and then the Supreme Court decided the statute is unconstitutional. And also because it goes to the question of why there would be no prejudice to Mr. Jones by holding the case now. Because if this case were to get sent down to the district court it's extremely unlikely that Mr. Jones would receive a sentence that would allow him to get out before the Supreme Court's decision in Rahimi which again is expected in just a few short months. So as to the substantive reasonableness of the sentence and the reasons why the sentence was imposed the district court here looked at a sentencing guidelines range of 37 to 46 months and determined that any sentence within that range would be insufficient to account for what the district court called the real conduct of the defendant as well as the 3553A factors. And I want to emphasize how well supported that decision was. The district court looked at the real conduct of the defendant in this case under the specific circumstances that the offense was committed. Now the real conduct of the defendant in this case doesn't change based on whether he was convicted, whether that conduct can be convicted under one statute or two. It's the same conduct at the same time. He possessed the gun unlawfully and he possessed it in a school zone. But the real conduct of the defendant here included not simply possessing an unlawful gun. This wasn't a garden variety case where someone gets pulled over and has a gun in their glove box or a center console. The defendant here attempted to draw his gun during a gang fight at a crowded high school basketball game, endangering at least 50 or 60 adults and children in his immediate vicinity as well as others who were attending the basketball game, about 200 in total. As the PSR stated, the factors warranting an upward departure, quote, as related to the offense and the defendant, are particularly egregious. It's not often that the word egregious needs an adverb, but in this case the district court decided that the defendant's conduct was particularly egregious given the circumstances surrounding the offense, including that the defendant was not only part of this gang fight at a crowded high school basketball game full of parents and children, but he escalated the encounter by pulling the gun, which had an extended magazine. Additionally, the PSR's finding that the factors warranting an upward departure as related to the defendant are particularly egregious is also very well supported. The sentencing judge here properly took account of the fact that at the time Mr. Jones committed this offense, he was pending trial on four different domestic violence battery charges, each of which had resulted in a restraining order and two of which involved a firearm. Mr. Jones beat the mother of his children repeatedly with his fists. He beat her with guns. On one occasion, he broke six windows in her residence when he was not able to break through a side door. He gave her a black eye, a chipped tooth. He knocked her unconscious in extreme pain. He pulled a gun and threatened to use it to kill her and the four other people in her car. Three of these incidents took place with one or more of their young children present. During one of them, their three-week-old daughter was present. During another, she was holding their four-month-old daughter when he beat her. As the PSR stated, Mr. Jones has a history of acting in an abusive manner to his long-term girlfriend and he has no regard for his conduct in the presence of his minor children. Additionally, the offense behavior exhibited by Mr. Jones in this case, as the PSR said, showed a complete disregard for their lives and the other people present. So we respectfully submit that the district court sentence was amply supported and that if the case were to go down on remand now, there's no reason to think that he would get a sentence that would allow him to get out before the Supreme Court were to consider the Rahimi case, which at that point he will be, I believe, about 30 months into his sentence and the statutory maximum of the remaining count would be 60 months. Additionally, I just want to advise the court before my time is done that there was some question about the conduct in Mr. Jones' prior domestic violence cases because it hadn't been adjudicated. I do want to advise the court that Mr. Jones has pleaded guilty in January of this year to aggravated battery in one of the cases that he was charged with. The other counts were dismissed at that time, I assume on the basis of a plea agreement. But in that case, this was a case from June of 2021 involving an ex-convict. Mr. Jones reportedly grabbed the hair of his children's mother and beat her in the head with his pistol and then when she was able to get away from him and run, did it several more times, causing her to pass out in extreme pain. Their one-year-old child was in the back of the car at the time. So Mr. Jones has pleaded guilty to that offense since the briefing in this case was complete. Again, the government respectfully submits the easiest way to resolve this case would be simply to hold it pending the Supreme Court's decision in Rahimi, which would be appropriate for all the reasons that we've stated. Alternatively, this court could find a waiver. If there are no further questions, we will rest on the briefs and the arguments made today. Thank you. In response to the argument raised by the government, I would suggest to the court that Mr. Jones did not waive his right to bring this issue before the court. This issue was brought as soon as Rahimi was decided on the day that the government's reply brief was filed. While it is true that Bruin was decided earlier, Bruin addressed conduct of a person who was seeking to get a permit for a concealed carry weapon and did not address the same kind of area of Rahimi. The rationale of Bruin was used in Rahimi, and the historical tradition of two-step analysis was used in the Rahimi case to reach the conclusion that this court did. But I would suggest to the court that the error was forfeited, not waived. And that does make a distinction, and I think that if the court finds, as we suggest, that the error was forfeited, then it is within the discretion of this court to address that under the plain error standard. I do agree with the government that I think it would be in the interest of judicial economy to hold this case in abeyance until Rahimi is decided, because I do think that that will be dispositive of the issue, and then we could either file supplemental briefs, or this court could decide based upon the holding in the United States versus Rahimi at the Supreme Court that was argued on November 7th. And that's really all I have, unless the court has additional questions. Thank you. Thank you.